778 So.2d 620 (2000)
Andrezj SAWICKI
v.
K/S STAVANGER PRINCE and Assuranceforeningen Skuld.
No. 99-CA-1459.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 2000.
Rehearing Denied January 31, 2001.
*621 Richard J. Dodson, Kenneth H. Hooks, III, Law Office of Richard J. Dodson, Baton Rouge, Counsel for Plaintiff/Appellant.
David B. Lawton, Kenneth J. Gelpi, Jr., Terriberry, Carroll & Yancey, L.L.P., New Orleans, Counsel for Defendant/Appellee.
Court composed of Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.
In this maritime case, plaintiff appeals from a judgment of the trial court granting *622 defendants' motions for a continuance of the trial and partial summary judgment and dismissing plaintiffs petition. We affirm.

FACTS AND PROCEDURAL HISTORY
On January 14, 1995, plaintiff, Andrezj Sawicki ("Mr. Sawicki"), a citizen and resident of Poland, was injured while serving as the first engineer aboard the M/V STAVANGER PRINCE, a Norwegian flag vessel. The accident occurred as Mr. Sawicki was replacing the cams on the main engine. Specifically, Mr. Sawicki was tapping on the cams when a metal splinter lodged into his left eye, causing damage to his retina. When the vessel reached New Orleans, Mr. Sawicki underwent surgery to remove the piece of metal lodged in his eye and to reattach the retina. After surgery, Mr. Sawicki was instructed to keep his head in a facedown position for a month in order for the retina to reattach. The eye injury has caused the Polish Government to classify Mr. Sawicki as thirty-five (35%) percent permanently disabled. At the time of the accident, the M/V STAVANGER PRINCE was in international waters approximately 30 miles off of Galveston.
The M/V STAVANGER PRINCE is owned by KS Stavanger Prince, a Norwegian partnership, and managed by DSD Shipping ("DSD"), a Norwegian corporation. Mr. Sawicki was employed for three contractual periods of engagement covering a period of three years (1993, 1994, and 1995). Mr. Sawicki's 1995 employment contract, the contract at issue, explicitly incorporated a collective bargaining agreement. Specifically, line 10 on the employment contract states:
"wages/overtime pay and other conditions according to collective agreement between ASO and POLISH SEAMEN UNION."[1]
Further, Section 11 of the employment contract states:
NORWEGIAN LAW APPLIES:
The Seaman accepts to be medically examined for drug and alcohol abuse and accepts to subject himself to subsequent random testing o/b for any abusesubject to testing carried out by authorized personnel.
Alco/drug testing carried out in Institute of Maritime MedicinePoland.
The section of the collective bargaining agreement which is relevant to these proceedings is Article 13 of the contract which states:
This agreement is subject to Norwegian law and the jurisdiction of the courts in Norway.
The contracts of engagement between the Company and the seafarers shall have provisions which indicate that the contracts of employment are subject to Norwegian law and jurisdiction of Norwegian Courts. Legal action against the Company concerning an employee's service on board the vessel, may, however, be brought either in the courts of Norway or in the courts of the country where the employee is domiciled.
On August 26, 1996, DSD paid Mr. Sawicki $10,800.00 in disability compensation pursuant to the collective bargaining agreement. On January 13, 1998, Mr. Sawicki filed this suit against K/S Stavanger Prince and its insurer, Assuranceforeningen Skuld, alleging that K/S Stavanger Prince committed an intentional or negligent tort in Louisiana. Mr. Sawicki obtained quasi-in-rem jurisdiction by way of a non-resident writ of attachment on the M/V STAVANGER PRINCE. On January 15, 1998, the M/V STAVANGER PRINCE was released after the defendants' posted $750,000.00 in security.
On February 11, 1999, defendants filed a motion for a partial summary judgment *623 and a request for a dismissal based on a forum selection clause. In support of their motion, defendants filed: (1) a memorandum; (2) the affidavit of Edith Midelfart, an attorney for ASO/NSA, stating that when Mr. Sawicki signed his employment contract, he was bound by the collective bargaining agreement requiring all disputes between the seafarer and shipowner be brought in either Norway or Poland; (3) the affidavit of an attorney specializing in Norwegian law; (4) a copy of the Seaman's Act of May 30, 1975 and Norwegian International Ship Registry Act; and (5) copies of federal cases cited in memoranda. On March 2, 1999, Mr. Sawicki filed a motion to strike defendants' motion for partial summary judgment as procedurally untimely. On March 4, 1999, defendants filed a motion to continue the trial.
After a hearing on March 5, 1999, the trial court maintained defendants' motions for a continuance of trial and for a partial summary judgment, dismissing the case. In its Reasons for Judgment, the trial court noted that it believed that "the collective bargaining agreement did control" and that, according to the agreement, the case was in the wrong forum.
Mr. Sawicki appeals, contending that (1) the trial court erred in granting a motion for summary judgment filed after the commencement of trial, (2) the trial court erred in enforcing the forum selection clause, and (3) the trial court erred in enforcing the forum selection clause without balancing factual findings as mandated in Lejano v. Bandak, 705 So.2d 158 (La. 1997).

STANDARD OF REVIEW
Appellate courts must review summary judgments de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.Pro. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.Pro. art. 966(B). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.Pro. art. 966 C(2). Taking into account these standards, we find that summary judgment is proper in this case.

ANALYSIS
Mr. Sawicki alleges as error the trial court's decision to grant defendants' motion for summary judgment filed after commencement of trial and before Mr. Sawicki rested. Mr. Sawicki argues that the Louisiana Code of Civil Procedure clearly envisions a summary judgment motion to be made prior to trial such that the parties be given notice of the court's ruling at least ten (10) days before trial is set to begin. Mr. Sawicki claims that the hearing on the motion for summary judgment was filed after trial began [October 13, 1998], and that the motion was scheduled one judicial day prior to the continuation of trial [March 8, 1999].
The defendants argue that the trial did not start in October 1998 and that the trial court properly continued the trial before ruling on the summary judgment motion. We agree.
La. Code of Civil Procedure art. 966(D) provides as follows:
The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in *624 any event judgment on the motion shall be rendered at least ten days prior to trial.
The record supports defendants' argument that the trial did not start in October 1998. The trial court noted, on October 13, 1998, that the testimony of Mr. Sawicki was taken pursuant to an agreement between the parties, and that the taking of the testimony did not waive any of the parties' exceptions. Further, Mr. Sawicki's counsel's own letter to defendants states, "a one-day Judge trial has been set for March 9, 1999 in this matter. A motion for continue [continuance] reserving plaintiff's testimony for October 14th will be forthcoming." Accordingly, we find that the evidence indicates that Mr. Sawicki's testimony, taken on October 13, 1998, was only for perpetuation purposes and that the trial was not to begin until March 1999.
The next issue to address is whether the trial court erred in granting a motion for summary judgment within ten days before trial. Mr. Sawicki cites a case from this court in support of his assignment of error: Mitchell v. St. Paul Fire Marine Insurance Company, 727 So.2d 1245 (La.App. 4 Cir. 1999).
We believe the instant case is distinguishable from the Mitchell case. In Mitchell, the trial was set for March 18-20, 1998. Defendant filed a motion for summary judgment on March 3, 1998. The motion was set for hearing on March 16, 1998. Plaintiff filed a motion for continuance of the March 16 hearing because plaintiff's attorney had another trial on March 16, 1998. However, the trial court, without ruling on the motion for continuance of the March 16 hearing, granted defendant's motion for summary judgment on the basis of the pleadings alone. Of significance to this court, in its decision to reverse the summary judgment in Mitchell, was the fact that plaintiff was not granted a hearing on the motion for the summary judgment, and that the trial court failed to make a ruling on her motion for continuance.
In the instant case, Mr. Sawicki's counsel appeared at the summary judgment hearing. Moreover, the trial court in this case granted the defendants' motion for a continuance of the trial before granting defendants' motion for summary judgment. Under these circumstances, we find that the trial court's granting of the motion for summary judgment was not in violation of La. C.C.P. art. 966(D).
Mr. Sawicki's second and third assignments of error allege that the trial court erred in enforcing the forum selection clause. In support of his argument, Mr. Sawicki quotes the following language from a Louisiana Supreme Court opinion, Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158, rehearing den. (La.3/27/98): "a contractual choice-offorum clause should be held unenforceable if enforcement would contravene a strong policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Mr. Sawicki argues that the Louisiana Supreme Court failed to find a definite Legislative statement of public policy applicable to void the enforcement of the forum selection clause. However, Mr. Sawicki argues that the Louisiana Legislature recently addressed this issue and amended the Louisiana restraint of business statute in 1999 "to make it clear and without doubt that forum selection clauses in contracts of employment are not enforceable in this state." Thus, Mr. Sawiski argues that the 1999 legislative enactment, in light of the Lejano opinion, clearly establishes that a forum selection clause in an employment contract is not enforceable. We disagree.
The law is well stated that federal law governs the enforceability of forum selection clauses in admiralty cases. Lejano, 705 So.2d at 166 citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). As such, we agree with defendants that *625 L.R.S. 23:921(A) is not applicable to this case. Rather, the trial court was bound to follow the federal law and standards set out in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), as did the Louisiana Supreme Court in the Lejano case. Thus, the issue before us today is whether, under federal law, the trial court erred in enforcing the forum selection clause contained in the collective agreement.
The Supreme Court holds that a forum selection clause should be enforced unless it can be clearly shown that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching" or "if enforcement would contravene a strong public policy of the forum in which suit is brought..." Bremen, 407 U.S. at 15, 92 S.Ct. 1907 (1972). Further, the Supreme Court stated that "in light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." Id.
In Lejano, the Louisiana Supreme Court enforced a forum selection clause against a Filipino seaman seeking to bring suit in a Louisiana court. In Lejano, a Filipino seaman brought suit in Jefferson Parish for an accident aboard a vessel which occurred off the coast of Florida. Plaintiff's employment contract required him to adjudicate all claims either in Norway or the Philippines. Defendant filed a motion for partial summary judgment based on the provisions of the forum selection clause, which was granted by the trial court and affirmed on appeal. Plaintiff maintained on review to the Supreme Court that he had no power to negotiate the terms of the agreement with his employer because the contract was written in English, a language which he did not understand. However, applying the standards promulgated by the Court in Bremen, the Supreme Court found that:
the forum selection provision of the employment contract is not adhesive, neither is it affected by fraud, undue influence, or overweening bargaining power. Moreover, Mr. Lejano has failed to make a clear showing that enforcement would be unreasonable, unjust, fraudulent or overreaching.
Lejano, 705 So.2d at 168. Thus, the Supreme Court held the forum selection clause enforceable, as it had been approved by the Phillipine government, and it had been signed by Mr. Lejano, and was, therefore, presumed to be the intent of the parties.
In this case, the forum selection clause, contained in the collective bargaining agreement, stated that the jurisdiction of dispute must be in Norway or the domicile of the seaman (Poland). This collective bargaining agreement was incorporated into the employment contract signed by Mr. Sawicki. Further, we find no merit in Mr. Sawicki's argument that he was not subject to the conditions of the collective bargaining agreement because he was neither a member of the ASO nor the PSU. Rather, we find that once Mr. Sawicki collected disability compensation under the collective agreement, he ratified the contract's applicability. In light of Bremen and Lejano decisions, we conclude the trial court correctly granted defendants' motion for summary judgment.
For the reasons stated above, we affirm the trial court's judgment.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, J., dissenting with reasons:
The majority's treatment of the applicability of current law on enforcement of forum selection clauses in admiralty cases is incomplete. The majority bases its opinion on three maritime cases: Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 *626 (1972); and Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158.
In Carnival Cruise Lines, the United States Supreme Court reviewed an action brought by cruise ship passengers against the cruise line, seeking damages for injuries received as a result of a slip and fall accident. The passengers' tickets, on their face, contained a forum selection clause stating that all disputes shall be litigated in Florida. In analyzing the forum selection clause, the Court stated: "this is a case in admiralty, and federal law governs the enforceability of the forum-selection clause we scrutinize." Id., 499 U.S. at 590, 111 S.Ct. 1522. After applying the Bremen analysis to the forum selection clause, the Court found that the clause was reasonable and enforceable, and not in violation of a federal statute which prohibits deprivation of claimant's right to competent jurisdiction for injury as a result of negligence.
In Bremen, a tug owner brought a limitation of liability action. The owner's contract to tow a barge from Louisiana to Italy contained a forum selection clause, designating London as the forum to hear disputes. The Court stated that forum selection clauses are enforceable unless the claimant clearly shows that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. 407 U.S. at 15, 92 S.Ct. 1907. Additionally, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." Id.
The Louisiana Supreme Court in Lejano reviewed the claims of a Filipino seaman who was injured in international waters off the coast of Florida, while serving aboard a Norwegian vessel. The plaintiff's employment contract contained a forum selection clause that required plaintiff to bring his suit in Norway or the Philippines. The Court, citing Bremen, analyzed the enforceability of the forum selection clause and found that the clause was enforceable. The Court stated:
Generally, questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive in nature. Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir.1990), citing Stewart, 487 U.S. at 32, 108 S.Ct. at 2245; Manetti-Farrow, Inc., v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir.1988). Because the validity and interpretation of forum selection clauses are regarded as procedural, they are generally controlled by state law. See [David W.] Robertson [Admiralty and Maritime Litigation in State Court, 55 La. L. Rev. 685, 729 (1995).] However, the United States Supreme Court has determined that in admiralty cases, federal law governs the enforceability of forum selection clauses. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).
In the instant case, the majority holds by focusing on the three aforementioned opinions, without any analysis that La. R.S. 23:921 is inapplicable. La. R.S. 23:921(A)(2), as amended by La. Act 58, provides:
The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the accident which is the subject of the civil or administrative action.
*627 The Louisiana legislature enacted La. Act 58 in 1999. The purpose of the amended statute is to overrule Lejano, and therefore create concurrent jurisdiction in maritime tort cases in Louisiana. See generally 28 U.S.C. § 1333; Lejano, 705 So.2d at 162 (citing David W. Robertson, Admiralty and Maritime Litigation in State Court, 55 La. L. Rev. 685 (1995)). The legislature intended in principle and policy that it would accommodate venue and forum for seamen under concurrent jurisdiction. Louisiana, in effect has every right as a matter of policy to create a forum for foreign seamen under concurrent jurisdiction.
Before this court in the instant case is a question of law at summary judgment. I would reverse the granting of summary judgment. I find that La. R.S. 23:921 applies to this case. The act is procedural and thus has retroactive applicability to this case.
Accordingly, I respectfully dissent.
NOTES
[1] ASO/NSA is the Norwegian Shipping and Offshore Federation, a shipowners' association that negotiates and enters into collective bargaining agreements for Norwegian shipowners.