807 So.2d 344 (2002)
Yvette PIERRE-ANCAR
v.
BROWNE-McHARDY CLINIC, David W. Hoerner, M.D., Lammico Insurance Company, Continental Casualty Company, and American Continental Insurance Company.
Yvette Pierre-Ancar
v.
Browne-McHardy Clinic, David W. Hoerner, M.D., and American Continental Insurance Company.
Nos. 2000-CA-2409, 2000-CA-2410.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2002.
*345 Catherine J. Smith, New Orleans, LA, Counsel for Plaintiff/Appellant.
Edward J. Rice, Jr., Arthur F. Hickham, Jr., Adams and Reese, L.L.P., New Orleans, LA, Counsel for Defendant/Appellee.
Court Composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, and Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
Plaintiff, Yvette Pierre-Ancar, appeals the trial court's judgment granting summary judgment in favor of the defendants in her medical malpractice lawsuit and dismissing her lawsuit on the day of trial.
On 10 July 1997, alleging acts of malpractice against David W. Hoerner, M.D., plaintiff sued Dr. Hoerner, the Browne-McHardy Clinic, and several insurers after a medical review panel rendered an opinion favorable to the defendants.
The defendants filed a summary judgment motion on 19 April 1999 claiming that the plaintiff listed as her only expert witness, Janos Voros, M.D., who had not indicated in his deposition in January 1999 that an act of malpractice had occurred. On 15 October 1999, the trial judge denied the motion. At the hearing, the judge indicated that although he believed that the plaintiff had not sufficiently opposed the motion, he was denying the motion because it was his procedure to do so if the case had not yet been set for trial.
After filing a motion to have the case set for trial, the defendants filed a motion to reset for hearing their summary judgment motion. This led to disagreement between counsel on whether the trial judge had earlier determined the merits of the summary judgment motion and what his reasons were for denying the motion. The case was realloted to another judge pursuant *346 to Rule 6, Section 3,[1] of the Civil District Court rules and the new trial judge denied the defendants' motion to reset after a hearing that was not transcribed.
On 17 April 2000, the defendants filed their summary judgment motion again, urging that the plaintiff had produced no expert testimony indicating a breach of the standard of care and including a transcript of the October 1999 hearing to clarify that the court had not ruled on the merits of the motion, had denied the motion only because the case had not been set for trial, and had stated that the motion could be filed again. After a hearing on 28 April 2000, the court deferred a decision on the motion until the day of the merits trial. On the morning of trial, 10 May 2000, counsel and the court again discussed the motion, and the court granted the defendants' motion for summary judgment before trial. In the 1 June 2000 judgment, the court gave the following reasons for judgment:
This matter came before the Court, on or about April 28, 2000, on a motion for summary judgment, and an official ruling on the motion was deferred until the morning of trial. After a review of all relevant pleadings and testimony, this Court is convinced that the Defendant must prevail in this medical malpractice action. The deposition testimony of Dr. Janos Voros, the Plaintiff's expert, succinctly illustrated that the medical malpractice at issue was not committed. The testimony is damaging to such a degree as to warrant granting summary judgment in favor of the Defendants.
It must be noted that unsworn, taped testimony was offered by the Plaintiff in an attempt to contradict the damaging statements made by Plaintiff's expert. However, this Court felt that consideration of this testimony would be improper, and simply allowed Plaintiffs counsel to proffer the testimony for review by an appellate court, should the Plaintiff choose to pursue an appeal. As the case stands now, granting the summary judgment is proper and dispositive of Plaintiff[']s case in chief.
The plaintiff appeals the judgment of 1 June 2000 granting the defendants' motion for summary judgment. We affirm.
In her first assignment of error, the plaintiff argues that the trial court erred in granting the defendants' third summary judgment motion when the motion presented no issues that had not been presented on the earlier summary judgment motions, which were both denied.
*347 Our review of the record leads us to conclude that the defendants' summary judgment motion was never determined on its merits. When first heard in October 1999, the trial judge specifically stated that the defendants could file the motion again after setting the case for trial. Considering the court's ultimate reasons for judgment in granting the motion, the earlier denial does not appear to have been based on the merits. Finally, the last summary judgment included new evidence in the form of the transcript of the hearing before the first judge to have heard the motion, evidence necessitated by the plaintiffs failure to acknowledge the basis for the judge's ruling or her possible miscommunication of the basis to the judge in the second motion for summary judgment.
With regard to the merits of the summary judgment motion, we further find that the defendants' motion was properly supported, and, when the burden then shifted to the plaintiff, her opposition to the motion was inadequate.
In her petition, the plaintiff alleged that she was a patient of Dr. Hoerner from 1990 to 1995 and that he had failed to diagnose her condition as endometriosis, which caused her condition to progress, caused her to have severe pain and emotional distress, and hindered her ability to conceive. The plaintiff underwent two surgeries performed by Dr. Voros, her treating physician after Dr. Hoerner. On her expert witness list, filed on 5 April 1999, the plaintiff listed Dr. Voros and "any witnesses called by the defendants."
At his 26 January 1999 deposition, when asked if he had rendered an opinion to the plaintiff regarding the care she received from Dr. Hoerner, Dr. Voros stated:
I told her that I didn't thinkthat she had a valid problem here, because making the diagnosis of endometriosis, it sounds difficult. I felt that it probably wouldn't have made that much difference, and I didn't think that she should proceed.
Asked if he had received any other medical information which would have changed his original opinion about whether there was medical malpractice by anyone else before he treated the plaintiff, Dr. Voros answered "no." The plaintiffs counsel chose not to question Dr. Voros at his deposition.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230. Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. La. C.C. P. art. 966.
The initial burden of proof remains on the movant to show that no genuine issue of material fact exists. However, if the movant will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2); Fairbanks v. Tulane University, 98-1228 (La. App. 4 Cir. 3/31/99), 731 So.2d 983, 985.
After the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary *348 judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
In a medical malpractice action, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
La. R.S. 9:2794(A). With a few exceptions which are clearly distinguishable from the instant case, because of the complex medical and factual issues involved in medical malpractice cases, a plaintiff will likely fail to sustain his or her burden of proving his or her claim under La. R.S. 9:2794 without medical experts. Pfiffner v. Correa, 94-0992 (La.10/17/94), 643 So.2d 1228, 1234. This is particularly true in a failure to diagnose case such as Pfiffner or the instant case. Thus, as a matter of law, the plaintiff's claim in this case must be proven by expert testimony. See Russo v. Bratton, 94-2634 (La.App. 4 Cir. 6/29/95), 657 So.2d 777, 785.
As the court noted in Richardson ex rel. Brown v. Lagniappe Hosp. Corp., 33-378 (La.App. 2 Cir. 5/15/00), 764 So.2d 1094[2]:
In a medical malpractice action, opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence.... This is especially true where the defendant physician has filed a motion for summary judgment supported with expert opinion evidence that his treatment met the applicable standard of care. (Citations omitted.)
Richardson, 33-378, at p. 5, 764 So.2d at 1098-99.
In support of the motion for summary judgment, the defendants submitted the opinion of the medical review panel. The opinion of the three physicians concluded that none of the defendants failed to meet the applicable standard of care in the case. Further, they submitted the 26 January 1999 deposition of Dr. Voros, the plaintiff's expert witness list, and the transcript of the first motion for summary judgment hearing before the court. They met their burden of proving an absence of factual support for the elements essential to a medical malpractice claim.
In opposition to the motion, the plaintiff submitted an affidavit of Dr. Voros, stating that he is the plaintiff's treating physician and an expert witness in her case, along with a transcript of a taped conversation *349 between the plaintiff and Dr. Voros after his deposition. The plaintiff's allegation that these two items refute the defendants' position and inject a genuine issue of material fact into her case is wrong. First, the affidavit of Dr. Voros mentions nothing about his opinion of the care given to the plaintiff. Second, the unsworn transcript of a conversation between Dr. Voros and the plaintiff neither presents a genuine issue of material fact nor constitutes competent evidence to refute a properly supported summary judgment motion.
In Richardson, supra, the court determined that a letter from a physician that was not submitted as a properly drafted affidavit was not properly before the court in deciding a summary judgment proceeding. Similarly, we find that identifying the plaintiff's expert without an affidavit or deposition testimony in which the expert actually testifies under oath in a manner favorable to the plaintiffs position is insufficient opposition to a properly supported summary judgment motion. See Edwards v. Raines, 35,284 (La.App. 2 Cir. 10/31/01), 799 So.2d 1184.
Despite a full year passing since the defendants originally brought their summary judgment motion, and despite the fact that the plaintiff was clearly informed by the original trial judge in what respect her evidence was lacking, the plaintiff failed to put forth expert testimony to support her position. The plaintiff was particularly required to produce such evidence because her expert had testified in his deposition in a manner clearly contrary to the plaintiffs position, and the defendants had supported their summary judgment motion with the opinion of the medical review panel that Dr. Hoerner rendered appropriate care to the plaintiff.
Hence, the plaintiff produced no specific facts showing the existence of a genuine issue of material fact for trial to defeat the defendants' motion for summary judgment. She did not establish that she could satisfy her evidentiary burden at trial. Her assigned error has no merit.
In her second assignment of error, the plaintiff argues that the rendering of the summary judgment on the morning of trial was contrary to law and an abuse of the trial court's discretion. The plaintiff cites La. C.C.P. art. 966(D) which states, "The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial." The plaintiff claims to have been prejudiced because witnesses were subpoenaed and ready for trial and her counsel had also prepared for trial.
The case cited by the plaintiff as being "on point," Mitchell v. St.Paul Fire & Marine Insurance Co., 98-1924 (La.App. 4 Cir. 1/27/99), 727 So.2d 1245, is actually easily distinguished.
In this case, the defendants filed basically the same motion for summary judgment for the third time on 17 April 2000. The matter was set for hearing on 28 April 2000, more than ten days before the trial date of 10 May 2000. According to the trial court's judgment and reasons for judgment, the matter was argued on 28 April 2000, but a ruling on the motion was deferred until the morning of trial. The record contains no transcript from the 28 April 2000 hearing, although on the day of trial, the trial judge and counsel discussed his ruling and the reasons for the ruling.
Although La. C.C.P. art. 966(D) states that a ruling on a motion for summary judgment shall be heard and rendered ten days before trial, we understand this requirement to apply to motions that do not dispose of the case in its entirety. The *350 purpose of the ten day requirement is to give the parties and a reviewing appellate court adequate time to review the issues presented by the motion.
Based on the record, we cannot find that the plaintiff was prejudiced because the trial judge delayed his decision until the morning of trial. Indeed, this decision gave the plaintiff almost two additional weeks to accomplish what the court in September of 1999 clearly advised her to dothat is, to obtain competent evidence to defeat the summary judgment motion. For unknown reasons, the plaintiff chose to disregard the court's specific instructions, instead continuing to rely upon an unsworn transcript of a conversation between the plaintiff and her expert. The record also contains the suggestion that the plaintiff led the second judge to believe incorrect information about the original judge's earlier ruling. Therefore, it was not until the defendants submitted a transcript of the earlier hearing that it became clear that the plaintiff failed to comply with summary judgment requirements.
Considering these factors, we find that any prejudice to the plaintiff resulted from her own unwillingness to follow instructions from the court and clear law on what is required to fulfill a party's burden in a summary judgment proceeding. Under these circumstances, we cannot conclude that the plaintiff was prejudiced by the court's decision to delay a ruling on the defendants' third summary judgment motion. The plaintiffs argument otherwise is unpersuasive.
Accordingly, we find no error in the trial court's judgment granting the defendants' summary judgment motion. The judgment is affirmed.
AFFIRMED.
NOTES
[1] Rule 6, Section 3, provides:

To avoid confusion when divisions rotate in and out of the domestic relations section, cases shall be allotted to sections rather than to the divisions of court. Upon filing the first pleading, a case shall be randomly allotted either to section 5 through section 16 (non domestic cases) or to a domestic relations. When a division ceases to be a domestic relations section, it shall be assigned those cases previously assigned to that division succeeding to the domestic relations section. The Clerk of Court shall publish conspicuously in the Clerk's Office the assignment of case sections to particular divisions of the court. The division shall handle the section cases assigned to it until a change in the assignment of cases in accordance with this Rule.
The case was originally allotted to Section 6 (Division B) of the Civil District Court. The judge of Division B, who presided over all Section 6 cases, was elected to another court, and the Louisiana Supreme Court assigned a pro tempore judge to handle cases of Section 6. The pro tempore judge heard the motion at issue. When a new judge was elected to fill the vacancy in Division B, all cases allotted to Section 6 were re-allotted to Division C of the court. The judge of Division C granted the motion from which the appeal was taken.
[2] Richardson, 33-378 (La.App. 2 Cir. 5/15/00), 764 So.2d 1094 on rehearing in part, 33-378 (La.App. 2 Cir. 6/21/00), 801 So.2d 386